UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DOMINIQUE PHILLIPS,

                Plaintiff,

    - against -                              **MEMORANDUM & ORDER**
                                                          04-CV-839 (RRM)(WDW)
MARRIOTT INTERNATIONAL, INC. d/b/a
LONG ISLAND MARRIOTT HOTEL and
CONFERENCE CENTER,

                Defendant.
------------------------------------------------------------X
**MAUSKOPF, United States District Judge.**

    Plaintiff Dominique Phillips brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), alleging that Defendant Marriott International, Inc. d/b/a Long Island Marriott Hotel and Conference Center ("Marriott" or "Defendant"), unlawfully discriminated against him on the basis of his race by subjecting him to negative and disparate treatment and terminating him from his employment at Marriott, where he was employed as a bartender in 1998 and 1999. Plaintiff alleges that Marriott discriminated against him on account of his race by: (1) issuing him unwarranted discipline; (2) denying his request for a transfer to the Marriott Hotel in New York City; (3) imposing more stringent rules regarding attendance and tardiness on him as compared to similarly situated Caucasian co-workers; (4) treating him disparately concerning his request for vacation; and (5) terminating him without cause. Plaintiff also alleges that Marriott subjected him to a hostile work environment.

    Defendant now moves for summary judgment on the grounds that Plaintiff has failed to make out a *prima facie* case of racial discrimination because he has not demonstrated that he performed his duties in a satisfactory manner, or that there is any nexus between his termination

and any alleged discrimination. Moreover, Defendant argues that, even assuming that Plaintiff could make out his *prima facie* case, Plaintiff's receipt of three written warnings under the Marriott Progressive Discipline policy constitutes the sole and legitimate reason for his termination, and Plaintiff cannot demonstrate that this reason is a pretext for racial discrimination. Defendant also argues that Plaintiff has failed to establish that he was subjected to a hostile work environment.

Plaintiff argues in opposition that, contrary to Defendant's assertion, he has made out a *prima facie* case that he was subjected to disparate treatment and that his termination, among other adverse employment actions, was the result of racial discrimination. Accordingly, he contends, even if Defendant has rebutted his *prima facie* case, there exist genuine issues of material fact as to whether Defendant was terminated because of his race, *i.e.*, whether Defendant's proffered non-discriminatory reasons for Plaintiff's termination are mere pretext. Furthermore, Plaintiff maintains that his hostile work environment claim also should not be dismissed because the evidence of racial comments by one of his supervisors, Jake Tezcan, is sufficient to create issues of fact as to whether Plaintiff was subjected to actionable workplace harassment.

For the reasons set forth below, the Court denies Defendant's motion for summary judgment in its entirety.

# BACKGROUND[1]

*A.     Plaintiff's Employment with Marriott*

Plaintiff Dominique Phillips, an African American, was hired on or about July 15, 1998 as a bartender for the Skylight Bar at the Long Island Marriott Hotel and Conference Center. The Position Description for the bartender position, which Plaintiff reviewed and signed on July 24, 1998, included a statement cautioning that "[t]he Long Island Marriott functions seven days a week, 24 hours a day," and that "it may be necessary to move an employee from his/her

---

[1] The following material facts are taken from the Local Rule 56.1 statements submitted by the parties and the affidavits and exhibits submitted in connection with Defendant's Motion for Summary Judgment and Plaintiff's Opposition thereto. The facts are undisputed except as noted.

The Court notes that the Local Rule 56.1 Statement submitted by Plaintiff (Doc. No. 117) failed to comply with the Local Rules, which require, in relevant part, that:

> (b) The papers opposing a motion for summary judgment shall include *a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing* a separate, short and concise statement of *additional* material facts as to which it is contended that there exists a genuine issue to be tried.

*See* Local Civil Rule 56.1 (b). Here, the paragraphs in Plaintiff's Statement did not correspond to those in the Statement submitted by Defendant, the moving party. Ordinarily, this failure would result in the material facts in Defendant's Statement being deemed admitted for the purposes of deciding the pending summary judgment motion. *See* Local Civil Rule 56.1(c). A district court, however, "has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (citations omitted); *see also Rateau v. City of New York*, No. 06-CV-4751 (KAM)(CLP), 2009 LEXIS 90112, at *2 n.1 (E.D.N.Y. Sept. 29, 2009) (exercising the court's discretion to review the admissible record evidence in determining whether proposed undisputed facts were disputed); *Robinson v. Keyspan*, No. 03-CV-4796 (FB)(LB), 2005 U.S. Dist. LEXIS 27057, at *2 n2 (E.D.N.Y. Nov. 9, 2005) (same). Accordingly, for the purposes of this motion, Defendant's statement of undisputed facts is treated as undisputed only where it is not controverted by admissible evidence in the record.

accustomed shift as business demands." (*See* Position Description, attached to the Affidavit of Sonya D. Johnson, dated June 4, 2009 (Doc. No. 116) ("Johnson Aff."), as Ex. 4, at 5.) The Long Island Marriott Hotel Local Standard Operating Procedure: Absenteeism and Tardiness, also received and acknowledged by Plaintiff, notes that employees will be considered late when they clock in for their shift eleven or more minutes past their scheduled start time, and that lateness or tardiness of one hour or more is considered excessive, and will result in an automatic written warning except in cases where the employee has had no previous occasion of lateness in the past ninety days or where the lateness was due to a medical or personal emergency, with the approval of a general manager or the director of human resources. (Johnson Aff., Ex. 5, at 1.)

Plaintiff worked during the hours of 9 a.m. to 4 p.m., Tuesday through Saturday. Plaintiff's colleagues at the Skylight Bar were Robert Billante and Jimmy D'Amato, both of whom were white, and more senior than Plaintiff. Plaintiff sometimes worked with Robert Billante, but his shifts did not usually overlap with Jimmy D'Amato. Plaintiff's managers during the relevant time period were General Manager Seth Critchell and Assistant Manager Jake Tezcan, both white.

On April 3, 1999, Plaintiff received and acknowledged a warning for a violation of Marriott's cash handling policy, although Plaintiff disputes the propriety of that warning. Nevertheless, Plaintiff was given an Associate Assessment rating of "Commendable" on April 15, 1999 by his manager, Jake Tezcan. On July 1, 1999, however, Plaintiff received and

acknowledged an additional warning for a violation of Marriott policies following an argument with the Executive Chef at the Long Island Marriott. Plaintiff disputes the issuance of that discipline as well. Both the April 3 and July 1 warnings were verbal, not written.

On September 14, 1999, Plaintiff filled out a Transfer Request seeking an internal transfer to the Marriott Marquis in Manhattan. Marriott's Department/Property Transfer policy requires that an employee seeking transfer to a different property have at least twelve months of service in their current position and no written warnings within the six months prior to requesting transfer. It is undisputed that Plaintiff met these qualifications at the time of his request.

Following the submission of his transfer request, Plaintiff received a written warning on or about October 13, 1999, based on an alleged argument with his supervisor, Assistant Manager Jake Tezcan. Plaintiff disputes the issuance of this warning, which he unsuccessfully appealed pursuant to Marriott's internal peer review procedures. Plaintiff received another written warning on or about October 21, 1999 for arriving late to work on July 31, 1999, September 7, 1999, and September 22, 1999, as well as absence on October 20, 1999, although Plaintiff disputes being late on the first three dates,[2] and argues that his absence on October 20, 1999 was

---

[2] Plaintiff alleges that on the dates in question he arrived to work *early*, prior to the time when Marriott's procedures would allow him to clock in, and that his managers promised to ensure that he was clocked in appropriately.

afterward excused by a manager on the grounds of illness. Finally, Plaintiff received a written warning on or about December 30, 1999 for not reporting to work on December 25, 1999, Christmas Day. Plaintiff argues that he had been told that the Skylight Bar was closed on December 25, and that his manager, Tezcan, had orally approved that he not come to work that day.[3] Plaintiff's account was supported by the affidavit of his co-worker, Sandra Huffman, but denied by Tezcan.

Pursuant to Marriott's Progressive Discipline policy, Plaintiff was suspended on account of the three written warnings he had received, and was eventually terminated on January 4, 2000.

B.  *Plaintiff's Allegations of Racial Discrimination*

Plaintiff argues that racial discrimination can be inferred both based on disparate treatment and direct evidence of discriminatory intent. Plaintiff claims that he was treated differently than his colleagues Robert Billante and Jimmy D'Amato with respect to the lateness/tardiness policy, with respect to vacation requests, and with respect to his request to transfer to another property. He alleges that, although Billante and D'Amato were often late, they were never subjected to verbal and written warnings as he was. He further alleges that

---

[3] Notably, it is undisputed that Plaintiff requested, and was approved for, vacation on December 24, December 28, December 29, and December 30, 1999. Furthermore, December 26 and December 27, 1999 were days that Plaintiff would normally be off, and in fact he was not scheduled to work on those days.

vacation requests for the two were approved verbally, without requiring the formal, written approval that Phillips was required to secure. Finally, he alleges that Billante, who transferred to the LaGuardia Marriott in June 2000, had his transfer request processed expeditiously and without problems, as compared to Plaintiff's transfer request, which Plaintiff alleges was delayed and undermined by Marriott Human Resources Director Lourdes Bobnis. Plaintiff alleges that Bobnis, who was apparently upset with Plaintiff following his argument with the Executive Chef, told him that she would ensure he could not transfer. Furthermore, Plaintiff claims that, contrary to Marriott policy, he was never informed of the status of his transfer request, and was only able to obtain a copy of it at the time of his termination.

In addition to these claims of disparate treatment, Plaintiff alleges that his manager, Tezcan, displayed direct animus toward him (and others) on account of his race. He alleges that Tezcan would demean him and treat him disrespectfully, including by writing in ink on Plaintiff's hands, against Plaintiff's will, by attempting to verbally and physically intimidate Plaintiff, and, most seriously, by referring to Plaintiff as "monkey boy" on several occasions.[4] Plaintiff also claims that he was aware that Tezcan demeaned and made discriminatory

---

[4] Notably, Plaintiff never claims to have directly heard Tezcan refer to him in this way; instead, he alleges that he heard about it from others, such as Billante and Marriott employee Emmanuel Francois.

7

statements regarding other African American employees of the Marriott, including the statement "You people are lazy." Plaintiff alleges that he complained to Bobnis, in her role in Human Resources, about this discriminatory conduct, but that no corrective action was ever taken.

## LEGAL STANDARD

### I. Summary Judgment Standard

Summary judgment is appropriate when the pleadings, depositions, interrogatories, admissions, and affidavits demonstrate that there are no genuine issues of material fact in dispute and that one party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether a genuine issue of material fact exists, the evidence of the non-movant "is to be believed" and the court must draw all "justifiable" or "reasonable" inferences in favor of the non-moving party. *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)); *Brosseau v. Haugen*, 543 U.S. 194, 195 n.1 (2004). Nevertheless, once the moving party has shown that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*,'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original), and "may not rely on conclusory allegations or unsubstantiated speculation," *Scotto v. Almenas*, 143 F.3d

8

105, 114 (2d Cir. 1998) (citing cases). In other words, the nonmovant must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. Where "the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to [its] case." *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993) (quoting *Celotex*, 477 U.S. at 322) (internal quotation marks omitted) (alteration in original). Thus, "[a] defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." *Allen v. Cuomo*, 100 F.3d 253, 258 (2d Cir. 1996) (citing *Anderson*, 477 U.S. at 247–48).

In discrimination cases, the merits typically turn upon an employer's intent, necessitating the exercise of abundant caution in granting summary judgment for the employer. *Holcomb v. Iona Coll.*, 521 F.3d 1300, 137 (2d Cir. 2008). Naturally, where an employer has acted with discriminatory intent, direct evidence of that intent will only rarely be available, thus "affidavits and depositions must be carefully scrutinized for circumstantial proof, which, if believed, would show discrimination." *Id.* (quoting *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994)). Even in the discrimination context, however, a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment. *Id.*

9

# DISCUSSION

## I. Plaintiff's Claim of Disparate Treatment

### A. Title VII Standard

Claims of disparate treatment in employment are analyzed according to the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* "burden-shifting" inquiry, in the absence of direct evidence of employment discrimination, a plaintiff must first establish a *prima facie* case of discrimination by demonstrating that: (1) he is a member of a protected class; (2) he was qualified for the position at issue; (3) he was subjected to an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 567 (2d Cir. 2000). This burden is minimal and does not require specific evidence of discrimination. *Joseph v. Leavitt*, 465 F.3d 87, 90 (2d Cir. 2006). If a plaintiff meets this burden, the defendant employer must then articulate a "legitimate, nondiscriminatory reason" for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802. To prevail, a plaintiff must then provide evidence that the employer's explanation is not true, but is instead only a pretext for discrimination. *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 91 (2d Cir. 2001).

The ultimate burden to persuade the trier of fact "that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252 (1981). It is not enough for a plaintiff merely to create

doubt that the defendant's stated reason was the real reason for discharging him. He must also put forth "evidence that would permit a rational factfinder to infer that the discharge was actually motivated, in whole or in part, by discrimination" on the basis of her race. *Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 561 (2d Cir. 1997). On a motion for summary judgment, the Court must examine "the entire record to determine whether the plaintiff could satisfy his 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff.'" *Schnabel v. Abramson*, 232 F.3d 83, 90, (2d Cir. 2000) (quoting *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 142 (2000)).

    B.    *Plaintiff's* Prima Facie *Case*

The Court finds that Plaintiff has established a *prima facie* case of discrimination against Marriott for wrongful termination. Plaintiff, an African American, is a member of a protected class. His employee assessments prior to the months leading up to his termination were uniformly positive, and, while Defendant argues that Plaintiff's receipt of five warnings in one year demonstrates that he did not perform his job duties satisfactorily, "for the satisfactory performance prong . . . . [plaintiff] 'need not demonstrate that [his] performance is flawless or superior, but rather only that [he] 'possess[es] the basic skills necessary for performance of the job.'" *Aguirre v. N.Y. State Police*, 156 F. Supp. 2d 305, 318 (S.D.N.Y. 2001) (quoting *de la Cruz v. N.Y. City Human Res. Admin. Dep't of Soc. Servs.*, 82 F.3d 16, 20 (2d Cir. 1996) (citations omitted)). Here, Plaintiff's reviews and other evidence of his competency as a bartender provide

credible evidence of his qualifications. Moreover, as discussed below, the warnings on which Defendant bases its argument of lack of qualification have been challenged by Plaintiff as unreliable and false. *See also Ames v. Cartier*, 193 F. Supp. 2d 762, 770 (S.D.N.Y. 2002) (finding that plaintiff had met his burden to establish a *prima facie* case where an initial positive evaluation was followed by a subsequent negative evaluation that plaintiff claimed was itself evidence of discriminatory animus and pretext). As to the third element of his *prima facie* case, Plaintiff has established that he was subjected to an adverse employment action in that he was terminated from his position.

Accordingly, the central issue is whether the circumstances surrounding Plaintiff's termination give rise to an inference of discrimination. Viewing the record at this stage in the light most favorable to Plaintiff, there remain disputes of fact which preclude granting Defendant summary judgment.

Plaintiff has provided evidence that his manager, Tezcan, who was directly involved in issuing some of the warnings against him (one of which concerned an alleged altercation between Plaintiff and Tezcan) made racially discriminatory statements about both Plaintiff and others of his co-workers. Notably, Defendant does not specifically deny that Tezcan made these statements, instead questioning the admissibility and reliability of *some* of the evidence offered by Plaintiff to support such a finding, namely a sworn statement by Robert Billante recounting that "It was common knowledge that Jake [Tezcan] . . . called [Plaintiff] a "monkey boy."

(Affidavit of Robert Billante, dated Oct. 7, 2005, attached as Ex. EE to the Affidavit of Joyce B. Parker (Doc. No. 119) ("Parker Aff."), at 1.) Defendant notes that Billante later testified at his deposition that he could not remember where he heard that Tezcan referred to Plaintiff as monkey boy, and that it might have been from Plaintiff himself. Defendant ignores, however, the Affidavit of Emmanuel Francois, (Parker Aff. Ex. FF), in which Francois, another co-worker of Plaintiff, recounts specifically that he heard Tezcan make that statement. While the Defendant may attack the credibility of this witness, such arguments are properly made to the fact-finder, and not to this Court on summary judgment. This evidence, especially when considered in light of the undisputed evidence that Tezcan wrote on Plaintiff's hands against his will, is sufficient to establish a genuine issue of material fact with respect to whether Tezcan, at least, possessed racial animus toward Plaintiff.

While Defendant argues that Plaintiff was not terminated by Tezcan, but instead through the application of Marriott's Progressive Discipline policy, it is undisputed that Tezcan was integral to the issuance of all three written warnings against Plaintiff, which form the alleged basis for his termination under the policy. The first written warning issued against Plaintiff as a result of an argument between Plaintiff and Tezcan on October 12, 1999, which allegedly culminated in Plaintiff pushing into Tezcan with his chest in a threatening way, at which point security personnel intervened. It is undisputed that there were no witnesses to much of the argument between Plaintiff and Tezcan, including the alleged physical contact, which occurred in

Tezcan's office, and accordingly, Plaintiff has established an issue of fact with respect to whether the warning was justified or an instance of Tezcan discriminating against him.

Similarly, the second written warning, dated October 21, 1999, concerned tardiness on three prior dates, as well as an alleged failure to show up for work on October 20, 1999. Plaintiff, however, argues that he was in fact at work on each of the three days he was supposedly late, and that he had not clocked in because of his early arrival. Furthermore, he claims that Tezcan and Critchell, his managers, had promised to clock him on for those days, and that he was unaware until the second warning issued that they had failed to do so. Plaintiff also claims that, pursuant to Marriott policy, he called in on the morning of October 20, 1999 to report that he was ill and unable to work, speaking to Assistant Manager Jill Emerson, and that this was evidenced by the leave request form for that date later signed by Emerson on October 28, 1999. (*See* Parker Aff., Ex. O.) At the very least, Plaintiff has established issues of fact as to whether his citation for tardiness was justified, or again an instance of discrimination against him.

Finally, the third written warning, dated December 30, 1999, initially reprimanded Plaintiff for being absent on December 25, 28, 29, and 30, 1999. However, it is undisputed that Plaintiff in fact had been granted leave for December 28-30, and that only the December 25 absence was at issue. Plaintiff claims that he had been told that the Skylight bar was closed for Christmas on that day, and that he did not need to request leave. Nevertheless, he claims that he

14

told Tezcan that he would also be on vacation, and not working, on December 25, and that Tezcan did not react. He supports this statement with the affidavit of Sandra Huffman, another Marriott employee.[5] Accordingly, Plaintiff has established genuine issues of fact as to whether or not he had been given verbal permission to not work on December 25, and the basis for his third written warning and suspension.

Given the numerous issues of fact discussed above, summary judgment must be DENIED.[6]

---

[5] Additionally, given that Plaintiff typically did not work Sundays or Mondays, if he had not taken off on Saturday, December 25, he would have been scheduled for work only one day, Christmas, between Thursday, December 23 and when he returned to work on Friday, December 31, New Year's Eve. This seems contrary to common sense, and so provides further support for Plaintiff's version of events.

[6] Plaintiff also argues that an inference of discrimination can be drawn from the disparate way in which Plaintiff was treated as compared to Billante and D'Amato, his fellow bartenders, but Plaintiff has failed to establish either that they were similarly situated to him (especially given that each was more senior than Plaintiff), or that he was in fact treated differently. For example, Plaintiff argues that his transfer request was handled differently than Billante's, but Plaintiff fails to provide any evidence other than his own testimony that his request was delayed or otherwise handled inappropriately. The mere fact that Plaintiff was not hired by the Marriott Marquis is insufficient to establish disparate treatment, especially where Billante was transferred to a different property, nor does Plaintiff offer any evidence that Bobnis actually followed up on her threats that she would make sure his request would not be processed. Plaintiff also fails to offer any evidence of racial animus on the part of Bobnis. Similarly, while Plaintiff alleges that Billante and D'Amato were treated differently with respect to tardiness, he offers nothing more than speculation and conclusory allegations in support of this claim. As summary judgment is being denied on other grounds, however, the Court need not discuss these allegations in any further detail.

## II. Plaintiff's Claim of Hostile Work Environment

To make out a hostile work environment claim, a plaintiff must establish the following elements: (1) that his workplace was permeated with discriminatory intimidation, ridicule and insult sufficiently severe or pervasive to alter the conditions of his work environment; and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993); *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997). The conduct in question "must be severe or pervasive enough to create an environment that 'would reasonably be perceived, and is perceived, as hostile or abusive.'" *Schwapp*, 118 F.3d at 110 (quoting *Harris*, 510 U.S. at 22). In other words, the first element of a hostile work environment claim requires allegations that demonstrate that the environment was *both* objectively and subjectively hostile and abusive. *See Gregory v. Daly*, 243 F.3d 687, 691–92 (2d Cir. 2001).

To support a hostile work environment claim, a plaintiff "must prove more than a few isolated incidents of [discriminatory] enmity. Casual comments, or accidental or sporadic conversation, will not trigger equitable relief pursuant to the statute." *Snell v. Suffolk County*, 782 F.2d 1094, 1103 (2d Cir. 1986) (citations omitted). In evaluating a plaintiff's claim, the court must consider "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."

*Howley v. Town of Stratford*, 217 F.3d 141, 154 (2d Cir. 2000) (quoting *Harris*, 510 U.S. at 23). Whereas disparate treatment claims typically focus on discrete harms—such as hiring or termination—a hostile work environment claim requires analysis of the "workplace environment as a whole." *Raniola v. Bratton*, 243 F.3d 610, 617 (2d Cir. 2001); *see also Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (determining hostile work environment requires an examination of the totality of the circumstances).

Here, as discussed above, the Court has found that there is at least a question of fact as to whether Plaintiff's supervisor, Tezcan, referred to Plaintiff as "monkey boy" on several occasions, made racially discriminatory remarks to other employees of the Marriott, and wrote on Plaintiff's hands, despite Plaintiff's strong objections. Furthermore, there are also questions of fact as to whether Tezcan, alone or with other Marriott supervisors, engaged in a campaign to create a pretext for terminating Plaintiff by manufacturing written warnings under false pretenses. Accordingly, Plaintiff has alleged both verbal and physical harassment, with significant consequences to his work environment, culminating in his suspension and termination. Considering the totality of circumstances, as required, *Howley*, 217 F.3d 141, this Court finds that there are genuine issues of fact precluding a grant of summary judgment to Defendant on Plaintiff's hostile work environment claim, and summary judgment is therefore DENIED.

## CONCLUSION

For the foregoing reasons, it is ORDERED that Defendant's motion for summary judgment is DENIED in full.

SO ORDERED.

Dated: Brooklyn, New York
March 30, 2010

_____ /
ROSLYNN R. MAUSKOPF
United States District Judge